No. 43,349

LELA U. SODEN, HUBERT I. SODEN, and ALINE SODEN, *Appellants*, v. THE STATE HIGHWAY COMMISSION OF THE STATE OF KANSAS, *Appellee.*

(387 P. 2d 182)

Opinion filed December 7, 1963.

*L. M. Cornish, Jr.,* of Topeka, argued the cause, and *Evart Garvin* and *William Davison,* both of St. John, *Ralph F. Glenn, M. D. Bartlow, Gary Rohrer, Jan W. Leuenberger,* and *Roger R. Viets,* all of Topeka, were with him on the briefs for the appellants.

*Ward D. Martin,* of Topeka, argued the cause, and *William M. Ferguson,* Attorney General, *Chas. N. Henson, Jr.,* Assistant Attorney General, and *Orville E. Caruthers,* all of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment denying a petition for injunction which sought to enjoin the condemnation of land for the purpose of constructing a grade separation at the intersection of two main highways.

The general facts, which are not in dispute, will first be stated.

The defendant, the State Highway Commission, straightened U. S. Highway 50S and relocated the highway intersection of U. S. 50S and U. S. 281 about two miles to the south of St. John, Kansas. The new intersection was opened in October, 1956. Following the relocation of the crossing, the plaintiffs made plans to construct a motel, restaurant, and service station on their land in the southwest quadrant of the relocated intersection at a cost approximating $750,000.

The officials and engineers of the State Highway Commission became alarmed by the accident rate at the newly established intersection. A study was made by the safety engineers on April 17, 1957. The director of safety recommended that a grade separation be considered for the U. S. 50S and U. S. 281 junction and that sufficient right-of-way and access rights be acquired for this purpose

as soon as it was practical to do so. On April 29, 1957, the assistant state highway engineer directed the engineer of design to prepare a layout for an interchange at the junction so that right-of-way plans could be prepared.

On May 8, 1957, the State Highway Commission adopted a resolution authorizing the right-of-way department to acquire by purchase or condemnation the right-of-way and access rights for a diamond interchange project. Pursuant to this authorization a condemnation petition was filed July 10, 1957, in the district court of Stafford County, Kansas. The district court approved the petition and appointed appraisers who viewed the property and filed their report and award. On August 14, 1957, the State Highway Commission authorized the payment of the amount of the appraisers' award in the sum of $13,375.10. On August 20, 1957, the State Highway Commission paid the amount of the award into the office of the clerk of the district court. The plaintiffs and the Quality Realty, Inc., another landowner, appealed from the award of the appraisers in the condemnation proceeding. On or about October 8, 1958, a settlement was made of the appeal of Quality Realty, Inc. The condemnation appeal of the plaintiffs is still pending.

On December 5, 1958, some sixteen months after commencement of the condemnation proceeding, the plaintiffs commenced this proceeding in the district court of Stafford County to enjoin the condemnation proceedings. The case was transferred to the district court of Shawnee County for trial.

More detailed facts will be presented as we discuss the contentions of plaintiffs to which they are applicable.

The district court entered judgment denying the injunction and plaintiffs have appealed.

The appellants contend that the appellee is seeking to condemn land which it may not use for many years, and is in effect speculating in land values, all of which it has no authority to do.

The condemnation proceedings were brought under the authority of the provisions of G. S. 1961 Supp., 68-413, which authorizes the acquistion of right-of-way under the procedure provided in G. S. 1949, 26-101 *et seq.*, for the purpose of establishing, laying out, opening, constructing, maintaining, and improving the state highway system, and the provisions of G S. 1961 Supp., 68-1902, which grants the appellee the authority to establish controlled access facilities and to construct and maintain frontage roads and to

acquire public and private property, including the right of access for such control access facilities and frontage roads by condemnation proceedings.

The statutes place no restrictions on the appellee as to the acquisition of land for anticipated future use. The matter is therefore left to its sound discretion.

It may be stated as a general proposition of law that the appellee could not speculate in land values by acquiring land through condemnation when there was no reasonable anticipation that the land would ever be used for highway purposes. However, the construction and maintenance of a state highway system requires planning and programming well into the future. The responsibility is placed on the State Highway Commission to determine what land will be necessary for carrying forward the highway program.

The inherent power of the legislature over eminent domain is limited only by constitutional restrictions and inhibitions. (*Glover v. State Highway Comm.*, 147 Kan. 279, 77 P. 2d 189; *Weast v. Budd*, 186 Kan. 249, 349 P. 2d 912.) It rests with the legislature to determine the power of eminent domain, when the power may be exercised and the character, method and extent of such exercise. (*Irrigation Co. v. Klein*, 63 Kan. 484, 65 Pac. 684; *Wallace v. City of Winfield*, 98 Kan. 651, 159 Pac. 11.) The power of eminent domain can only be exercised by virtue of a legislative enactment. (*Sutton v. Frazier*, 183 Kan. 33, 325 P. 2d 338.) However, once the legislature has delegated to a public authority the power to determine the necessity of exercising the power, the decision of the grantee as to the necessity can only be reviewed by the courts for the purpose of considering public use, fraud, bad faith, or abuse of discretion. (*State, ex rel., v. City of Topeka*, 176 Kan. 240, 270 P. 2d 270; 29 C. J. S. 882, Eminent Domain, § 89b.) A court cannot sit in judgment on the motives actuating a public authority in pursuing a course authorized by the legislature. (*DePriest v. City of Salina*, 101 Kan. 810, 168 Pac. 872.)

The facts in this case do not indicate lack of public use, bad faith or abuse of discretion on the part of the appellee in the exercise of its authority.

Before considering the facts pertaining to this particular issue, we pause to consider the state of the record. The appellee suggests that the abstract of appellants makes no attempt to produce or abstract any substantial part of the evidence or exhibits which were produced in the trial court. It states in its brief:

"The appellants are hardly in a position to ask the Supreme Court to review the evidence when they have not produced the evidence to be considered.

"We call the court's attention to the recent case of *Jocich v. Greyhound Cab Co.*, 188 Kan. 268, 362 P. 2d 27, where at page 269 the court stated:

" 'In view of the contentions of counsel for the parties, and because of the confusing nature of the record presented by the abstract, it has been necessary to resort to the files of the trial court and the transcript of the record. The transcript discloses the omission of the testimony of two witnesses, one being a physician. Therefore, questions relating to the sufficiency of the evidence cannot be reviewed.'

. . . . . . . . . . . . . .

"In view of the failure of the appellants to abstract the evidence, the appellants are bound by the general findings of the trial court in all matters with reference to the weight or sufficiency of the evidence. . . ."

The appellee made no attempt to comply with rule 5 of the Rules of the Supreme Court in which it is stated:

". . . If the appellee shall claim that such abstract is incomplete for the purpose stated or is inaccurate, he shall furnish a counter-abstract correcting any such omissions or inaccuracies. . . ."

There is no way that this court can determine whether an abstract contains omissions unless the omissions are abstracted by the appellee, or unless this court resorts to the files of the trial court and its transcript of the record. The burden of establishing the inadequacy of appellants' abstract should be assumed by the appellee, not this court.

We have, however, called for the files of the trial court and the transcript of the record. The transcript does disclose that there are material omissions in the abstract.

An examination of the transcript covering the testimony of the highway engineer, the assistant highway engineer, and the safety director discloses that at the time of the condemnation proceedings the accident rate at the highway intersection was 60.3 per each ten million vehicles using the crossing. This was about three times the normal number of accidents at such crossings. At the time of the condemnation proceedings it was a recommendation of all three witnesses that the appellee start immediately to construct a grade separation at the crossing. Both the number of vehicles using the crossing and the number of accidents began to drop off in August, 1957. As a result, the construction at the crossing has not been put on the priority list and may not be for some time.

In testing the validity of the appellee's action against a charge of arbitrary conduct, bad faith, or abuse of discretion, the conditions

existing at the time of the condemnation are to be considered, not the conditions which may exist at a much later date. Once land has been properly condemned because of an apparent necessity, abandonment is not required because conditions have changed which eliminate the necessity for immediate construction. The record does not disclose any facts indicating misconduct on the part of the appellee.

The appellants next contend that the appellee failed to comply with the procedural requirements which are prerequisites to the taking of property and access rights by condemnation proceedings. They specifically call our attention to G. S. 1961 Supp., 68-1902 which authorizes the designation and establishment of controlled access facilities, ". . . wherever such highway authorities determine that traffic conditions, present or future, justify such facilities, . . ." Appellants further contend that there is no showing or indication that members of the Commission ever considered any information concerning traffic conditions.

The statute provides that the Commission may establish and construct controlled access facilities wherever, not whenever, it determines that traffic conditions, present or future, justify such facilities. Only the determination of where controlled access facilities are necessary is required by the statute.

On May 8, 1957, the State Highway Commission adopted the following resolution:

"On motion of Mr. Rugan, seconded by Mr. Wassberg, the Commission authorized the Right of Way Department to acquire by purchase or condemnation, the right of way and access rights required for Project 281-93-F 035-2 (7), Stafford County. This location is the intersection of US 50 and US 281."

At the time the appellee passed the resolution, it had before it the reports and recommendations of its engineers and safety director. We cannot say that it did not determine that traffic conditions justified the taking of the property and the acquisition of access rights at the location in controversy. No doubt more definite findings would be of benefit to the condemnee, the public and the records of the Commission, regardless of the requirements of the statute.

The appellants challenge the validity of G. S. 1961 Supp., 68-413, as in violation of article 2, section 16, of the Constitution of the State of Kansas providing that no bill shall contain more than one subject which shall be clearly expressed in its title. The substance

of the contention is that the title of the act covers only the acquisition of an interest in real estate for state highway purposes while the amendment contained a paragraph permitting the State Highway Commission to exchange right-of-way, no longer needed, for new or other highway right-of-way. The title of the act, Chapter 381 of the Laws of Kansas, 1951, reads:

"AN ACT empowering the state highway commission to acquire interests in real estate for state highway purposes, amending section 68-413 of the General Statutes of 1949, and repealing said original section."

The provision providing for the exchange of right-of-way, to be abandoned, for new or other right-of-way was contained verbatim in G. S. 1949, 68-413, before the section was otherwise amended.

In the case of *Water District No. 1 v. Robb*, 182 Kan. 2, 318 P. 2d 387, at page 19 of the opinion it is said:

"Where the new matter in an amended act is germane to the subject of the subject of the original act and the title of the original act is sufficiently broad to cover everything embraced in the amended act, the requirements of Article 2, Section 16 of the Kansas Constitution are met. (*Brewer v. City of Pittsburg*, 91 Kan. 910, 139 Pac. 418.)"

As the matter to which the object is addressed was included in the original act, its inclusion in the amended act was sufficiently covered by the statutory reference to the original act in the title.

The record disclosed no reversible error. The judgment of the trial court is affirmed.

APPROVED BY THE COURT.